```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

FRONTIER CONSTRUCTION COMPANY, )
INC., )
                               )
          Plaintiff,           )
                               )
     vs.                       ) Civil Action No. 09-794
                               )
NICHOLAS M. MAZZELLA and       )
RICHARD L. ABBOTT,             )
                               )
          Defendants.          )

## **MEMORANDUM**

### I. INTRODUCTION

In this civil action, Plaintiff, Frontier Construction Company, Inc., seeks damages from Defendants, Nicholas M. Mazzella (individually, "Mazzella") and Richard L. Abbott (individually, "Abbott"), for breach of the duty of loyalty (Count I), breach of fiduciary duty (Count II), unfair competition (Count III) and civil conspiracy (Count IV).[1] Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint under Fed.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief may be granted. For reasons which follow, the motion to dismiss will be denied.

---

[1]This civil action was originally filed in the Court of Common Pleas of Westmoreland County, Pennsylvania. On June 19, 2009, Defendants removed the action to this Court under 28 U.S.C. § 1441(a) based on complete diversity of citizenship between Plaintiff and Defendants and an amount in controversy exceeding $75,000.00. See 28 U.S.C. § 1332.

1

## II. FACTUAL ALLEGATIONS

In summary, Plaintiff's complaint alleges the following facts:

Plaintiff is a Pennsylvania corporation with a principal place of business in Jones Mill, Pennsylvania. Plaintiff provides a wide range of construction services, including construction and refurbishment of championship quality golf courses. (Complaint, ¶¶ 1, 6). From September 6, 2005 to March 6, 2009, Abbott, who currently resides in South Carolina, was the President of Plaintiff's Southeast Division. From September 25, 2006 to March 1, 2009, Mazzella, who currently resides in North Carolina, was Plaintiff's Business Manager. (Complaint, ¶¶ 3-4, 7-8).

As high-level management employees, Defendants were entrusted with detailed information concerning Plaintiff, including confidential financial information and trade secrets. As employees of Plaintiff, Defendants agreed to devote 100% of their time and effort on its behalf. In addition, Defendants agreed not to engage in activity in any field in which Plaintiff was engaged and to keep Plaintiff's information confidential. (Complaint, ¶¶ 10-12).

During the majority of his employment as Plaintiff's Business Manager, Mazzella lived in Washington County, Pennsylvania and worked in Westmoreland County, Pennsylvania. In

October or November of 2008, Mazzella approached Plaintiff and requested permission to relocate to Charlotte, North Carolina. Mazzella assured Plaintiff that he would continue to work full-time and in the best interests of Plaintiff if permitted to relocate. In reasonable reliance on Mazzella's assurances, Plaintiff reluctantly agreed to his relocation to North Carolina. (Complaint, ¶¶ 9, 13-14).

In December 2008 or January 2009, Plaintiff advised a number of its employees, including Defendants, that sales were slow. Plaintiff requested all employees, including Defendants, to continue to put forth their best effort to generate business for the company. Between December 2008 and March 2009, the sales generated by Defendants were low and their generation of new leads for Plaintiff was practically non-existent. (Complaint, ¶¶ 15-16).

In February 2009, due to slow sales and a lack of leads, Plaintiff and Mazzella agreed that his final day of employment would be March 1, 2009. At the time, Mazzella specifically promised Plaintiff that he would devote 100% of his efforts to generating sales and leads for Plaintiff until his last day of employment. Unbeknownst to Plaintiff, Mazzella had been discussing employment with Aspen Corporation ("Aspen"), Plaintiff's chief competitor, for some time. Immediately after his employment with Plaintiff ended, Mazzella joined Aspen as its

Business Manager, the same position he had held with Plaintiff. (Complaint, ¶¶ 17-20).

Unbeknownst to Plaintiff, Mazzella also engaged in the following conduct:

(a) in mid-February 2009, Mazzella logged onto Plaintiff's computer server with his company-owned laptop computer and deleted all references to Aspen and its employees from his contact list;

(b) on February 27, 2009, two days before Mazzella was leaving his employment with Plaintiff to work for a competitor, he logged onto Plaintiff's computer server and accessed and extracted confidential company files;

(c) in late February 2009, while Mazzella was still employed by Plaintiff, he utilized his company-owned computer for business matters relating to his current employer, Aspen;

(d) in early March 2009, after his employment with Plaintiff had ended, Mazzella logged onto Plaintiff's computer server and accessed and extracted confidential company files; and

(e) prior to returning his company-owned computer to Plaintiff, Mazzella wiped the computer completely clean of information pertaining to Plaintiff, including current, ongoing and prospective projects and emails generated or received by Mazzella while he was employed by Plaintiff.

(Complaint, ¶¶ 21-25).

At its own expense, Plaintiff has been able to reconstruct from Mazzella's company-owned computer, previous company-owned cellular telephone Personal Digital Assistant ("PDA") and records from Plaintiff's telephone service provider, some of the information that Mazzella attempted to remove or delete from his company-owned computer or had sent outside Plaintiff's network, including emails and text messages between Mazzella and Nicole, now a former employee of Plaintiff. (Complaint, ¶ 26).

Mazzella has never returned to Plaintiff his most recent company-owned cellular telephone PDA and the relevant business information contained therein. In addition, Mazzella has never returned a digital camera, Garmin GPS unit, Bluetooth earpiece and wireless data device belonging to Plaintiff. (Complaint, ¶ 27).

In late February 2009, Abbott informed Plaintiff that he had been offered a job by a company called Carolina Green. Abbott was very vague about the job with Carolina Green, but he stressed repeatedly that he was going to be out of the golf business and would not be in competition with Plaintiff. Contrary to Abbott's representations, the Carolina Green "job" was a fiction created by Abbott to lull Plaintiff into a false sense of security. Upon leaving his employment with Plaintiff on March 6, 2009, Abbott immediately joined Aspen as the President of its Southeast

Division, the same position he had held with Plaintiff. (Complaint, ¶¶ 28-31).

Unbeknownst to Plaintiff, on March 9, 2009, after leaving his employment with Plaintiff, Abbott logged onto its computer server and deleted the entirety of his company-owned email account, which included information pertaining to past, current, ongoing and prospective projects of Plaintiff. In addition, Abbott has never returned to Plaintiff his company-owned cellular telephone PDA and the business information contained therein. (Complaint, ¶¶ 32-33).

Defendants had been preparing, both jointly and severally, to leave their employment with Plaintiff and accept virtually identical positions with Aspen long before they left Plaintiff. As part of their scheme and conspiracy, Defendants began communicating with each other via different email servers and addresses in order to hide their activities and plans to leave Plaintiff. For months before their employment with Plaintiff ended, Defendants hoarded jobs and prospects to take to Aspen to Plaintiff's detriment. (Complaint, ¶¶ 35, 37-38).

Defendants have never returned to Plaintiff all of the information they had, or should have had, regarding past, current and prospective jobs and leads for Plaintiff. In addition, Defendants have never returned to Plaintiff vast quantities of confidential information and trade secrets in their possession,

custody and control, including Plaintiff's estimating data, profit/loss data and databases used by Plaintiff in bidding on projects. (Complaint, ¶¶ 34, 36).

Rather than working at all times in the best interests of Plaintiff, Defendants were actively planning to leave their employment with Plaintiff and work for Aspen, and Defendants took work and information with them when they left Plaintiff to join Aspen. Although Defendants attempted to destroy information and wipe clean Plaintiff's computer files and databases and communicated with each other outside Plaintiff's network, Plaintiff has been able to gather information showing that numerous jobs and prospects which should have been directed to Plaintiff were secretly, surreptitiously, intentionally and improperly kept from Plaintiff and given to Aspen, Defendants' new employer. (Complaint, ¶¶ 39, 41).

### III. STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8(a)(2) is to give the defendant fair notice of what the claim is and the grounds upon which it rests.

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the United States Supreme Court abrogated the oft-repeated standard

for dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim enunciated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), *i.e.*, that a complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Following Twombly, a plaintiff must "nudge[] [his or her] claims across the line from conceivable to plausible" in order to survive a motion to dismiss. However, heightened fact pleading of specifics is not required. 550 U.S. at 570. See also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'").

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1950 (2009). With respect to this task, in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir.2009), the Court of Appeals for the Third Circuit noted that

> "..., after Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Id. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff

has a "plausible claim for relief." Id. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" Iqbal, 129 S.Ct. at 1949...."

578 F.3d at 210-11.

Applying this "new" standard to the facts alleged in Plaintiff's complaint, the Court has no difficulty concluding that Plaintiff has "nudged" its claims against Defendants across the line from "conceivable to plausible."[2]

## IV. DISCUSSION

### Count I - Breach of the Duty of Loyalty

An agent has a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship. Restatement (Third) of Agency, § 8.01 (2006). An agent's specific duties of loyalty include a duty to refrain from competing with the principal and from taking action on behalf of,

---

[2]In Umland v. Planco Financial Services, Inc., 542 F.3d 59 (3d Cir.2008), the Court of Appeals for the Third Circuit stated that despite the "new contours" of pleading claims for relief following Twombly, the Court of Appeals would adhere to the familiar statement of the standard of review for motions to dismiss in the pre-Twombly cases of Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) and Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir.2002), i.e., "[w]e accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable reading indicates that relief may be warranted." Id. at 64.

or otherwise assisting, the principal's competitors throughout the duration of the agency relationship, as well as a duty not to use property or confidential information of the principal for the agent's own purpose or those of a third party. Restatement (Third) of Agency, §§ 8.04 and 8.05 (2006). Defendants assert that Plaintiff has failed to state a claim for breach of the duty of loyalty because it "has stated only bare, legal conclusions that are unsupported by factual allegations that would make this claim plausible on its face." (Document No. 6, p. 6).

With respect to claims for breach of the duty of loyalty, the district court in Bro-Tech Corp. v. Thermax, Inc., __ F.Supp.2d __, 2009 WL 2854891, No. 05-CV-2330 (E.D.Pa.Sept. 3, 2009), noted:

\*   \*   \*

> Pennsylvania law permits an agent or employee to "make arrangements to compete," but prohibits him from using "confidential information peculiar to his employer's business and acquired therein." (footnote omitted). Within this framework, an employee may properly inform customers of his current employer that he is leaving the employer to work elsewhere in the field, or to start his own competing business. (footnote omitted). In contrast, an employee who, while still working for her employer, makes improper use of her employer's trade secrets or confidential information, usurps a business opportunity from the employer, or, in preparing to work for a rival business, solicits customers for such rival business, may be liable for a breach of the duty of loyalty. (footnote omitted).

\*   \*   \*

2009 WL 2854891 at \*25.

See also <u>SHV Coal, Inc. v. Continental Grain Co.</u>, 545 A.2d 917 (Pa.Super.1988), <u>rev'd on other grounds</u>, 587 A.2d 702 (Pa.1991) (Employee, as agent for coal broker, breached duty of loyalty to broker when he set out to divert business, which he was being paid to acquire for broker, to a competitor with whom he had agreed to accept employment; diversion was without any knowledge or consent of broker which was not even aware that employee was contemplating other employment).

After reviewing the factual allegations in the complaint, the Court agrees with Plaintiff that it has alleged the "very essence" of a claim for breach of the duty of loyalty. (Document No. 7, p. 8). Specifically, Plaintiff has alleged that Defendants diverted business opportunities and leads to their new employer while still employed by Plaintiff, and that Defendants used Plaintiff's confidential information and trade secrets to benefit their new employer. Clearly, these factual allegations are sufficient to raise Plaintiff's right to relief for breach of the duty of loyalty above the speculative level assuming (as the Court must do at this stage of the proceedings) that the allegations are true.

The Court also notes its agreement with Plaintiff concerning Defendants' misplaced reliance on the trial court's decision in <u>Medical Resources, Inc. v. Miller</u>, 2001 WL 1807934, Nos. 2242 and 111041 (Pa.Com.Pl.Jan.29, 2001), to support their motion to

11

dismiss the claim for breach of the duty of loyalty.  In Medical Resources, the plaintiff corporations, which operated diagnostic imaging centers, sought a preliminary injunction to enjoin the defendants, a former employee and his competing company, from, among other things, using their trade secrets, doing business with any of the plaintiffs' referring doctors and customers and hiring the plaintiffs' employees.  After a hearing, the trial court denied the plaintiffs' request for a preliminary injunction.  Regarding plaintiffs' claim for breach of the duty of loyalty under Pennsylvania law, the trial court noted there was no evidence that the former employee competed with the plaintiffs during his term of employment and no conclusive evidence that he had used any of the plaintiffs' confidential information or trade secrets.  Contrary to Defendants' contention, the standard for a preliminary injunction, which requires a party to show a "clear right to relief," is not similar to the requirement of Rule 8(a)(2) (Document No. 6, p. 10 n.1), which only requires a plaintiff to state a claim for relief that is "plausible on its face."  In fact, Rule 8(a)(2) "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary elements of the claim]."  Twombly, 550 U.S. at 556.  Plaintiff's claim for breach of the duty of loyalty meets this standard.

**Count II - Breach of Fiduciary Duty**

An agent, as a fiduciary, "is required to act solely for the benefit of his principal in all matters concerned with the agency." SHV Coal, 545 A.2d at 921. For the reasons stated above in connection with Plaintiff's claim for breach of the duty of loyalty, the Court concludes that Plaintiff also has alleged sufficient facts to state a plausible claim for breach of fiduciary duty.

**Count III - Unfair Competition**

In Synthes (U.S.A.) v. Globus Medical, Inc., 2005 WL 2233441, No. 04-CV-1235 (E.D.Pa.Sept.14, 2005), the plaintiffs, which were related companies that manufactured medical implants for use in orthopedic surgery, asserted claims against a competing manufacturer of spinal implant devices and two of the plaintiffs' former employees, alleging improper use of the plaintiffs' confidential information, recruitment of the plaintiffs' employees and passing off the plaintiffs' products as their own. In response, the defendants filed counterclaims alleging that the plaintiffs used improper marketing techniques and made defamatory statements about the defendant company and its products in an effort to thwart its growth in the spinal implant device industry. The plaintiffs moved to dismiss the defendants' counterclaims. In discussing the motion to dismiss

13

the defendants' counterclaim for unfair competition, the district court stated:

\* \* \*

> Globus' allegations in the Amended Counterclaims are also sufficient to support its claim for unfair competition. As the Pennsylvania Supreme Court noted in <u>Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co.</u>, 411 Pa. 383, 391, 192 A.2d 657 (1963)(quoting <u>A.L. Schecter Poultry Corp. v. United States</u>, 295 U.S. 495, 531, 55 S.Ct. 837, 79 L.Ed. 1570 (1935)), "[u]nfair competition, as known to the common law, is a limited concept. Primarily, and strictly, it relates to the palming off of one's goods as those of a rival trader." However, the court further explained: "In recent years its scope has been extended. It has been held to apply to misappropriation as well as misrepresentation." <u>Id</u>. Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information. (citations omitted).

\* \* \*

2005 WL 2233441 at \*8.

In seeking the dismissal of Plaintiff's claim for unfair competition, Defendants assert that "there are no allegations in the Complaint that even resemble actions or conduct on the part of the defendants that would constitute unfair competition." (Document No. 6, p. 16). The Court does not agree.[3]

---

[3]As noted by Plaintiff, in connection with their motion to dismiss Plaintiff's unfair competition claim, Defendants, again, mistakenly rely on a trial court decision denying a motion for a preliminary injunction after a hearing at which evidence was presented. See <u>Citadel Broadcasting Co. v. Gratz</u>, 52 Pa.D.&C. 4th (Pa.Com.Pl.2001). (Document No. 6, pp. 15-16, Document No. 7, p. 11).

14

Plaintiff's unfair competition claim, which is set forth in paragraphs 49 through 51 of the complaint, specifically incorporates paragraphs 1 through 48. As noted by Plaintiff, a review of the complaint's factual allegations and the reasonable inferences to be drawn therefrom shows that the complaint contains "precisely" the types of allegations needed to support a claim for unfair competition. (Document No. 7, pp. 10-11). Specifically, Plaintiff alleges that Defendants held high-level management positions while in its employ; that as a result of their management positions with Plaintiff, Defendants were entrusted with confidential information and trade secrets, including Plaintiff's estimating data, profit/loss data and databases utilized by Plaintiff in bidding on projects; that Defendants unlawfully accessed Plaintiff's computer server and extracted company files after their employment with Plaintiff ended; that Defendants did not return cellular telephone PDAs which contained confidential information after they left Plaintiff's employment; and that Defendants have utilized the confidential information and trade secrets in their new employment with Aspen to Plaintiff's detriment. Clearly, the foregoing allegations are sufficient to state a "plausible" claim for unfair competition under Pennsylvania law.

**Count IV - Civil Conspiracy**

In order to state a civil action for conspiracy, a complaint must allege: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage. See, e.g., Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa.Super.2004). In seeking the dismissal of Plaintiff's civil conspiracy claim, Defendants contend that the complaint is "devoid" of factual allegations supporting the claim. (Document No. 6, p. 19). Again, the Court disagrees.

As noted by Plaintiff, its complaint includes allegations that Defendants acted with a common purpose and performed overt acts in furtherance of that purpose, *i.e.*, Defendants misappropriated Plaintiff's confidential information and trade secrets to utilize in their new employment with its chief competitor. Moreover, the complaint alleges that Plaintiff suffered actual legal damage as a result of Defendants' conspiracy, *i.e.*, the loss of jobs and leads to its chief competitor. (Document No. 7, p. 12). The foregoing allegations are sufficient to state a plausible claim for civil conspiracy.

**V. CONCLUSION**

In sum, the Court concludes that the factual allegations in Plaintiff's complaint meet the requirements of Fed.R.Civ.P.

8(a)(2) for pleading claims for relief. The allegations are more than sufficient to provide fair notice of Plaintiff's claims to Defendants, as well as the grounds upon which the claims rest. Thus, Defendants' motion to dismiss will be denied and Defendants will be directed to file an answer to Plaintiff's complaint.

_____
William L. Standish
United States District Judge

Date: November 13, 2009